AMENDMENT NO. THREE
TO
JELD-WEN, INC.
EMPLOYEE STOCK OWNERSHIP
AND RETIREMENT PLAN

(As Amended and Restated Effective as of January 1, 2008,
as Further Amended Through Amendment No. Two)

JELD-WEN HOLDING, inc. amends the JELD-WEN, inc. Employee Stock Ownership and Retirement Plan, as amended and restated generally effective as of January 1, 2008, and as further amended through Amendment No. Two (the "Plan"), effective as of dates specified below. Except as otherwise provided below, amendments are shown by double underlining new text and striking out deleted text.

I.

Section 2.40 is amended as follows:

    2.40    <u>Reserved</u>.  ~~"Local Passbook Rate" shall mean the Wells Fargo Bank passbook rate of interest credited from time to time to savings accounts; however, the minimum rate shall be 3% and the maximum rate shall be 5%.~~

II.

Provisions of Section 7 are amended as follows:

    7.3    <u>Valuation of Assets</u>.

    (a)    <u>Non-Company Stock Assets</u>. As of the last day of each Plan Year (and at such other time or times as Administrator shall direct), the Trustee shall determine the fair market value of the assets of the Trust Fund (other than Company Stock) and report such value to Administrator in writing. In determining such fair market value, the Trustee shall evaluate the assets of the Trust Fund at their fair market value as of such Valuation Date ~~and shall deduct all expenses for which the Trustee has not yet obtained reimbursement from Employer or from the Trust Fund~~. Such valuation shall not include any investments in Company Stock, or any Accounts which have been segregated in accordance with the applicable Plan provisions.

    (b)    <u>Company Stock</u>. Company Stock shall be valued in good faith by a qualified, independent appraiser engaged by the ~~Administrator~~ <u>Trustee</u> for that purpose based on all relevant factors.

    (c)    <u>Plan and Trust Expenses. All expenses which the Employer has not elected to pay shall be deducted from the Trust Fund in the Trustees' valuation of the Trust Fund. The Administrator shall have the discretion about the manner of allocating</u>

<u>reasonable plan and trust expenses among Participants and Beneficiaries in accordance with Sections 14.1(b) and 19.6 and to the extent permitted under applicable law.</u>

7.5 <u>Adjustment of Accounts</u>. As of the Annual Valuation Date (and at such interim Valuation Dates as Administrator shall direct), ~~and before crediting the amount of any contributions and Forfeitures for the year allocated to the Participants,~~ Administrator shall adjust and make allocations to the Accounts of Participants, as follows:

(a) Each Account shall be adjusted for payments made to the Participant or Beneficiary or for his benefit during the period, including hardship withdrawals under Section 5.7.

(b) Each Participant shall be credited with the appropriate portion of the Employer Contributions<u>, Forfeitures (if applicable), and value of shares released from the Suspense Account</u> during the period which have <u>not</u> previously been credited to his Account <u>unless the Employer Contributions, Forfeitures or released shares are intended to be allocated at a later time in the same Plan Year</u>.

(c) An Employee's Elective Deferrals Account shall be credited with any Elective Deferrals made by that Participant during the period and not previously credited to his Accounts and reduced by any withdrawals made during the period.

(d) In the case of a Forfeiture of a portion of the Participant's Regular Employer Contributions Account during the Plan Year, there shall be subtracted from the Participant's Regular Employer Contributions Account the amount of the Forfeiture.

(e) With respect to unallocated investments held by the Trust Fund for the collective benefit of all Participants, ~~except as provided in Section 7.8 below,~~ each Participant's Account will be credited or charged with an allocable share of the net realized income or loss of the collective investments for the period and any net increase or decrease in the fair market value of the collective investments. Such allocation shall be made on a time-weighted basis based upon the amount of time each particular amount is in the Trust during the period.

7.6 <u>Reserved.</u> ~~Valuation of Accounts Upon Termination. Should a Participant terminate employment, Retire, become Disabled or die, his Account shall be valued on the Valuation Date next preceding or coinciding with such occurrence, adjusted for (a) any payments to or withdrawals made by the Participant, (b) Company Stock released from the Suspense Account, and (c) Elective Deferrals made by the Participant and any Employer Contributions subsequent to the preceding Valuation Date. If the terminated Participant's Account is not fully distributed to him or segregated prior to a subsequent Valuation Date, the valuation shall be made as provided under Section 7.8 herein.~~

7.7 <u>Transferred Accounts</u>. Generally, ~~assets~~ <u>amounts</u> received on behalf of a Participant as assets transferred from another plan shall be accounted for in a separate subaccount. However, such amounts may be combined with the Participant's other subaccounts under this Plan to the extent such subaccounts are fully vested, unless segregation is necessary to

2

preserve optional forms of benefit as required by Code section 411(d)(6). ~~Assets~~ Amounts received on behalf of a Participant as a rollover initiated prior to January 1, 2007, shall be combined with the Participant's Elective Deferrals Account and shall be subject to the distribution restrictions applicable to Elective Deferrals.

    7.8    <u>Undistributed Accounts</u>. Any part of a Participant's Account which is retained in the Trust after the Participant's Separation From Service ~~in accordance with the provisions of Section 10 shall be held and administered as follows:~~ <u>shall share in the allocation of income, gains, and losses (including increases and decreases of value of Trust Fund's assets) the same as Accounts maintained for Participants who have not Separated From Service. Plan expenses shall be allocated among Participants in accordance with other applicable Plan provisions.</u>

    ~~(a)    Early Distributions. If the Participant's Account is to be distributable prior to the last day of the Plan Year following the Plan Year during which the Participant's Separation From Service occurred, the value of the Account shall be determined as follows:~~

    ~~(i)    If the value of the Account is $5,000 or less, the value of the Account shall be the value of the Participant's Account balance on the December 31 next preceding or coinciding with the Participant's Separation From Service, adjusted for (1) any payments to or withdrawals made by the Participant subsequent to the preceding December 31; (2) Elective Deferrals made by the Participant subsequent to the preceding December 31; and (3) interest at the Local Passbook Rate in effect for such year credited from the preceding December 31 to the date of distribution of the Account.~~

    ~~(ii)    If the value of the Account is more than $5,000, the value of the Account shall be the value of the Participant's Account on the December 31 coincident with or next following the Participant's Separation From Service, adjusted for (1) any payments to or withdrawals made by the Participant subsequent to that December 31, and (2) interest at the Local Passbook Rate in effect for such year, credited from such December 31 Valuation Date to the date of distribution of the Account.~~

    ~~(iii)    The Account shall not be credited for any appreciation or depreciation in the value of Company Stock held by the Trust after the December 31 Valuation Date used to value the Account.~~

    ~~(b)    Deferred Distribution. If the time of distribution of the Participant's Account is deferred until after the last day of the Plan Year following the Plan Year during which the Participant's Separation From Service occurred, the value of the Participant's Account shall be the value of the Participant's Account on the December 31 coinciding with or following the Participant's Separation From Service. The Account shall be credited with interest at the Local Passbook Rate in effect for such year. The Account shall not be credited with any further contributions, Forfeitures, or for any appreciation or depreciation in the value of Company Stock held by the Trust after the December 31 Valuation Date used to value the Account.~~

~~(c) Installment Payments. If the Participant's Plan Benefit is to be paid in cash installments pursuant to Section 10.3(a)(ii) below, the Account shall be credited with interest at the Local Passbook Rate in effect for such year from the December 31 Valuation Date used to value the Account to the date of the first installment distribution, and subsequently credited with interest at a variable rate based upon the Bank of America, N.A. prime rate as it changes from time to time, subject to such maximum and minimum rates as the Administrator may establish for this purpose, until the final installment is paid. The Account shall not be credited with any further contributions, or Forfeitures or for any appreciation or depreciation in the value of the Company Stock held by the Trust after the December 31 Valuation Date used to value the Account.~~

~~7.9 Accounts of Participants who Terminate During Initial Plan Year of Participation. If a Participant whose Account balance value is less than the Designated Dollar Amount terminates employment during the initial Plan Year of Participation and is not employed by the Employer on the last day of the Plan Year following his Employment Commencement Date, such Participant's Account shall be credited with interest at the Local Passbook Rate in effect for the year and shall not share in any earnings or any increase in fair market value of the Account for such initial Plan Year.~~

### III.

Certain provisions of Section 10 are amended as follows:

10.1 <u>Benefit Elections</u>. If the Participant is eligible to receive a Plan Benefit in excess of the Designated Dollar Amount, the Administrator shall provide a benefit election notice to a Participant at least 30 days and not more than 180 days prior to the Benefit Commencement Date (unless waived as provided below). The notice shall explain the optional forms of benefit payments under the Plan, ~~including the material features and relative values of the options, and~~ the Participant's right to defer distribution until the Participant attains the later of age 62 or the Normal Retirement Age. ~~If the Plan does not provide a joint and survivor annuity form of payment of benefits, then distribution may commence less than 30 days after the notice required above, provided that the Administrator clearly informs the Participant that~~ <u>and the consequences of failing to defer payment, and</u> the Participant<u>'s</u> ~~has a~~ right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option)<u>.</u>~~, and the~~ <u>The</u> Participant<u>,</u> ~~after receiving the notice,~~ <u>may waive the 30 days by</u> affirmatively ~~elects~~ <u>electing</u> a distribution <u>after receipt of the notice</u>.

10.3 <u>Form and Method of Payment</u>.

(a) <u>General</u>.

(i) ~~For~~ <u>Distribution of the Plan Benefit to</u> a Participant who Separated <u>f</u>~~F~~rom Service prior to July 1, 2010~~, when eligible for distribution, payment of the Participant's Plan Benefit~~ shall be ~~made~~ <u>paid</u> in one of the following forms, as determined pursuant to a policy established by the Administrator:

1. Single lump sum payment~~., or~~

4

    2. ~~Cash installments in s~~Substantially equal annual ~~payments~~ installments over a period not to exceed five years. If the ~~fair market~~ aggregate value of the Participant's ~~Account~~ vested Group 1 subaccounts or Group 2 subaccounts (each Group considered separately unless the date distribution begins with respect to both Groups is the same date) is in excess of the total dollar limit specified in Code section 409(o)(1)(C), as adjusted for inflation, in effect as of the date distribution ~~is required to~~ begins, ~~distributions may be made~~ the benefit will be distributed in substantially equal annual ~~payments~~ installments over a period ~~not longer than~~ of five years plus an additional one year (but less than an additional five years) for each increment by which the aggregate value of the Participant's ~~Account~~ subaccounts exceeds the installment dollar limit ~~proscribed~~ prescribed under Code section 409(o)(1)(C), as adjusted for inflation. In no event shall such distribution period exceed the period permitted under Code section 401(a)(9) regarding age 70½ minimum required payments.

  (ii) ~~For~~ Distribution of the Plan Benefit to a Participant who Separated ~~f~~From Service on or after July 1, 2010~~, when the Participant becomes eligible for a distribution under Section 10.4(d), payment of the Participant's Plan Benefit~~ shall be ~~made~~ paid in one of the following forms, provided that the ~~Administrator~~ Company may establish a different dollar amount in 1 ~~and 2~~ below from time to time:

    1. ~~if~~ If the ~~fair market~~ aggregate value of the Participant's ~~Plan Benefit being distributed is~~ vested Group 3 subaccounts or Group 4 subaccounts (each Group considered separately unless the date distribution begins with respect to both Groups is the same date) is less than $25,000, a single lump sum payment ~~of cash or Company Stock, or~~.

    2. ~~if the fair market value of the Participant's Plan Benefit being distributed is $25,000 or more, installments of cash or Company Stock in~~ If 1 does not apply, substantially equal annual installments ~~payments of cash or Company Stock~~ over a period of five years. If the ~~fair market~~ aggregate value of the Participant's ~~Plan Benefit~~ vested Group 3 subaccounts or Group 4 subaccounts (each Group considered separately unless the date distribution begins with respect to both Groups is the same date) is in excess of the total dollar limit specified in Code section 409(o)(1)(C), as adjusted for inflation, in effect as of the date distribution ~~is required to~~ begins, ~~distributions may be made~~ the Plan Benefit will be distributed in substantially equal annual ~~payments of cash or Company Stock~~ installments over a period ~~not longer than~~ of five years plus an additional one year (but less than an additional five years) for each increment by which the aggregate value of the Participant's subaccounts exceeds the installment dollar limit ~~proscribed~~ prescribed under Code section 409(o)(1)(C), as adjusted for inflation. In no event shall such

distribution period exceed the period permitted under Code section 401(a)(9) regarding age 70½ minimum required payments.

(b) Direct Rollovers.

(i) General. A Distributee may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

(ii) Definitions.

1. Eligible Rollover Distribution. Effective January 1, 2007, an Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: (i) any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of 10 years or more; (ii) any distribution to the extent such distribution is required under Code section 401(a)(9); and (iii) any hardship distribution.

2. Eligible Retirement Plan. An Eligible Retirement Plan is an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), or a qualified trust described in Code section 401(a) that accepts the Distributee's Eligible Rollover Distribution. An Eligible Retirement Plan shall also mean an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from the Plan. For amounts that are not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Company Stock), an Eligible Retirement Plan means only (i) a qualified trust described in Code section 401(a) or an annuity contract described in Code section 403(b) that receives the amounts in a Direct Rollover and agrees to account separately for amounts so transferred (including interest thereon), including accounting separately for the portion of such distribution which is includible in gross income and any portion of such distribution which is not includible in gross income; (ii) an individual retirement account described in Code section 408(a), or (iii) an individual retirement annuity described in Code section 408(b). Effective for distributions made on or after January 1, 2008, an Eligible Retirement Plan also includes a Roth IRA described in Code section 408A(b); provided, however, that for taxable years beginning before

6

~~January 1, 2010, a Distributee may not make a Direct Rollover to a Roth IRA in a taxable year for which the Distributee has modified adjusted gross income exceeding $100,000 or for which the Distributee is married and filed a separate return.~~ The definition of Eligible Retirement Plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Code section 414(p). Effective January 1 2010, for a Distributee who is a 'designated Beneficiary' under Code section 401(a)(9)(E) and the regulations thereunder and who is not the surviving spouse of the Participant (a 'non-spouse Beneficiary'), an Eligible Retirement Plan means only <u>(i)</u> an individual retirement account described in Code section 408(a), <u>(ii) a Roth IRA described in Code section 408A(b),</u> or (iii) an individual retirement annuity described in Code section 408(b)<u>,that has been</u> established ~~by~~ <u>on behalf of</u> the non-spouse Beneficiary ~~for purposes of receiving the Direct Rollover~~ <u>as an "inherited IRA" within the meaning of Code section 408(d)(3)(C)</u>.

        3.    <u>Distributee</u>.

        A.    This paragraph A. is effective for distributions made prior to January 1, 2008. A Distributee includes an Employee or former Employee. A former Employee's Beneficiary who is also the former Employee's surviving spouse is also a Distributee with regard to the interest of such designated Beneficiary. In addition, an Employee's or former Employee's spouse or surviving spouse who is an alternate payee under a qualified domestic relations order, as defined in Code section 414(p), is a Distributee with regard to the interest of such spouse or surviving spouse.

        B.    This paragraph B. is effective for distributions made on or after January 1, 2008 (unless a later date is specified below). A Distributee includes an Employee or Former Employee. In addition, an Employee's or former Employee's spouse or surviving spouse who is an alternate payee under a qualified domestic relations order, as defined in Code section 414(p), is a Distributee with regard to the interest of such spouse or surviving spouse. Effective January 1, 2010, a Distributee shall include a Participant's non-spouse <u>designated</u> Beneficiary.

        4.    <u>Direct Rollover</u>. A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

    (c)    <u>For Amounts of the Designated Dollar Amount or Less</u>. If the value of the Participant's Plan Benefit does not exceed the Designated Dollar Amount, the Plan Benefit shall be ~~distributed~~ <u>paid</u> in the form of a single lump sum ~~or a Direct Rollover~~ at the time provided in Section 10.4(a)~~without the Participant's consent being necessary~~.

7

(d) <u>For Amounts in Excess of the Designated Dollar Amount</u>. If the value of the Participant's Plan Benefit is more than the Designated Dollar Amount, the Plan Benefit may ~~only~~ be distributed prior to the Participant's attaining Normal Retirement Age <u>only</u> if the Participant consents in writing within 180 days of being provided with a benefit election notice <u>described in 10.1</u>.

(e) <u>Consents</u>. Neither the consent of the Participant nor the Participant's spouse shall be required to the extent that a distribution is <u>under 10.3(c) or is</u> required to satisfy Code section ~~(~~401(a)(9) or Code section 415. In addition, upon termination of this Plan if the Plan does not offer an annuity option (purchased from a commercial provider), the Participant's Account balance may, without the Participant's consent, be distributed to the Participant or transferred to another defined contribution plan (other than an employee stock ownership plan as defined in Code section 4975(e)(7) within the same controlled group.

(f) <u>Protected Benefits</u>. Subject to the exceptions in Code section 411(d)(6)(C), any optional form of benefit expressly required to be continued pursuant to Code section 411(d)(6) for affected Participants shall be continued.

10.4 <u>Time of Payment</u>.

(a) <u>For Amounts Equal to $5,000 or Less</u>. If the value of the Participant's Plan Benefit does not exceed $5,000, the Plan Benefit may be distributed as soon as administratively feasible after the date the Participant Separates From Service.

(b) <u>For Participants Separating From Service Prior to July 1, 2010 With Account Balances Greater Than $5,000</u>. For a Participant who Separated From Service prior to July 1, 2010, if the value of the Participant's Plan Benefit exceeds $5,000, the Plan Benefit shall be distributed <u>or suspended</u> as follows subject to Section 10.3(d) (and in accordance with the provisions of Section 10.3(a)(i)):

(i) <u>Death, Disability or Retirement</u>. If a Participant incurs a Separation From Service by reason of death, Disability or Retirement, distribution of the Participant's ~~Account~~ <u>Plan Benefit</u> may be made as soon as administratively feasible after the March 1st of the Plan Year following the Plan Year during which such Separation From Service occurs due to the above listed events.

(ii) <u>Other Termination - Fully Vested</u>. If a Participant Separates From Service for reasons other than death, Disability or Retirement under the Plan, but after becoming fully vested in his Regular Employer Contributions Account, distributions shall be made as follows:

~~a~~<u>1</u>. The Participant's Elective Deferrals Account, Basic Employer Contributions Account, Matching Contributions Account, Qualified Nonelective Contributions Account, voluntary deductible employee contributions account and nondeductible contributions account <u>(collectively the "Group 1 subaccounts")</u> may be distributed as soon as

8

administratively feasible after the March 1st of the Plan Year following the Plan Year during which the Separation From Service occurs.

~~b~~2.  The Participant's Regular Employer Contributions Account and tax-credit employer contributions account (collectively the "Group 2 subaccounts") may be distributed as soon as administratively feasible following the March 1st of the Plan Year after the earliest of the following:

A.  ~~t~~The Plan Year during which the Participant attains Normal Retirement Age,~~; or attains~~

B.  The Plan Year the Participant has attained age 55, ~~if such Participant Separated From Service after completing at least~~ and completed 15 Years of Service, ~~but prior to attaining age 55; provided, however, in no event shall distribution be delayed beyond the end of the sixth~~

C.  The close of the fifth Plan Year following the Plan Year during which the Separation From Service occurred.

~~If the Participant is Reemployed by the Company prior to the first day of the sixth Plan Year referred to above, then distribution need not be made at the time specified above and the distribution date will be determined upon the Participant's subsequent Separation From Service in accordance with the terms applicable under the Plan at that time.~~

(iii)  **Other Termination - Not Fully Vested.**  If a Participant Separates From Service and is not fully vested in his ~~Regular Employer Contributions Account~~ Group 2 subaccounts, then the ~~Participant's Elective Deferrals Account and any other subaccounts in which the Participant is vested~~ Group 1 subaccounts, if any, may be distributed as soon as administratively feasible after the March 1st of the Plan Year following the Plan Year during which the Separation From Service occurs.  The Participant will forfeit the portion of his ~~Regular Employer Contributions Account~~ Group 2 subaccounts that is not vested at the time of the Participant's Separation From Service at the earlier of the following:

(1)  The distribution of vested benefits.

(2)  After incurring a Five-Year Break in Service.

(iv)  **Termination During Initial Year of Participation.**  If the Participant Separates From Service during his initial year of participation pursuant to Section 3 herein, his Elective Deferrals Account, if any, shall be distributed to him as provided under paragraphs (a) and (b)(iii) above.

9

(v) <u>Exceptions of Deferred Distributions</u>. If distribution is deferred beyond the March 1st of the Plan Year following the Plan Year of termination as provided above, distribution may be made earlier <u>as provided in section 10.4(b)(i)</u> if the Participant dies or becomes Disabled, ~~If death or Disability occurs, distribution may be made upon~~ <u>subject to</u> proof of such death or Disability. Proof of Disability shall be made by providing evidence that the Social Security Administration made a determination that the Participant is entitled to Social Security disability benefits. ~~The amount of the benefit distributed shall be determined under Section 7.6 herein.~~

<u>(vi)   Suspension of Distributions. If the Participant is Reemployed prior to the date distribution starts, then distribution shall not start at the time specified above and the distribution date will be determined upon the Participant's subsequent Separation From Service in accordance with the terms applicable under the Plan at that time. If the Participant is Reemployed after start of distribution in installments, then the installments shall be suspended and subsequent distribution will be determined upon the Participant's subsequent Separation From Service in accordance with the terms applicable under the Plan at that time.</u>

(c)   <u>Required Minimum Distributions</u>. Required minimum distributions must be made pursuant to <u>Appendix A</u>.

(d)   <u>For Participants Separating From Service On Or After July 1, 2010 With Account Balances Greater than $5,000</u>. For a Participant who Separated From Service on or after July 1, 2010, if the value of the Participant's Plan Benefit exceeds $5,000, the Plan Benefit shall be distributed as follows:

(i)   <u>Death, Disability or Retirement</u>. If a Participant incurs a Separation ~~f~~<u>F</u>rom Service by reason of death, Disability or Retirement, the Participant's ~~Account~~ <u>Plan Benefit</u> shall become distributable no later than the last day of the Plan Year following the Plan Year during which such Separation From Service occurs due to the above listed events and shall be payable in accordance with the provisions of Section 10.3(a)(ii).

(ii)   <u>Other Terminations</u>. If a Participant Separates from Service for reasons other than death, Disability or Retirement under the Plan, the Participant's Elective Deferrals Account, voluntary deductible employee contributions account and nondeductible contributions account <u>(collectively the "Group 3 subaccounts")</u> shall become distributable no later than the last day of the Plan Year following the Plan Year during which such Separation from Service occurred and the Participant's Regular Employer Contributions Account, tax credit employer contributions account, Basic Employer Contributions Account, Matching Contributions Account and Qualified Nonelective Contributions Account <u>(collectively the "Group 4 subaccounts")</u> shall be distributable commencing in the sixth Plan Year following the Plan Year during which the Separation from Service occurred, and shall be payable in accordance with the provisions of Section

10

10.3(a)(ii); provided that the ~~Administrator~~ Company may establish a dollar amount below which amounts will be distributable commencing in an earlier Plan Year (which dollar amount may be modified from time to time). If the Participant is Reemployed by the Company prior to the ~~date~~ start of distribution referred to above, then distribution ~~need~~ shall not ~~be made~~ start at the time specified above and the distribution date will be determined upon the Participant's subsequent Separation from Service in accordance with the terms applicable under the Plan at that time. The Participant will forfeit the portion of his ~~Regular Employer Contributions Account and any other unvested~~ Group 4 subaccounts that are not vested at the time of the Participant's Separation from Service at the earlier of the following:

    (1) The distribution of vested benefits.

    (2) After incurring a Five-Year Break in Service.

    (iii) Exceptions of Deferred Distributions. If an Account is scheduled to become distributable as provided in subsection (ii) above, the Account will become distributable earlier if the Participant dies or becomes Disabled. ~~If death or Disability occurs, distribution may be made upon~~, subject to proof of such death or Disability. Proof of Disability shall be made by providing evidence that the Social Security Administration made a determination that the Participant is entitled to Social Security disability benefits.

    10.6 Latest Benefit Commencement Date. In the event of a Participant's Separation From Service, the Participant's Plan Benefit shall be paid at such time or times as provided in Section 10.4; provided, however, that~~:~~

    ~~(a)~~ ~~The~~ payment of a Participant's Plan ~~b~~Benefit shall begin not later than ~~60 days after the end of the Plan Year in which~~ the ~~latest~~ later of the following unless the Participant otherwise elects or does not consent to the distribution:

    (~~i~~a) 60 days after the end of the Plan Year in which the later of the following occurs:

    (i) The Participant reaches the Normal Retirement Age under the Plan; or

    (ii) The ~~date the~~ Participant Separates From Service ~~if subsequent to the Normal Retirement Age~~.

    (b) The Participant's Plan Benefit can be determined.

~~Notwithstanding the foregoing, the failure of a Participant and spouse to consent to a distribution while a benefit is immediately distributable shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section.~~

IV.

Provisions of Section 12 are amended as follows:

12.8 _Diversification of Investments_. With respect to Company Stock acquired by the Plan, the following provisions shall apply:

(a) _Election by Qualified Participant_. Each Qualified Participant shall be permitted to direct the Plan as to the investment of up to 25% (in whole multiples of 1 percent) of the value of the Participant's Account attributable to Company Stock which was acquired by the Plan (to the extent that such portion exceeds the amount to which a prior election under this Section applies) within 90 days after the last day of each Plan Year in the Participant's Qualified Election Period. Within 90 days after the close of the last Plan Year in the Participant's Qualified Election Period, a Qualified Participant may direct the Plan as to the investment of 50% (in whole multiples of 1 percent) of the value of such Account (to the extent that such portion exceeds the amount to which a prior election under this Section applies). Notwithstanding the foregoing, a Qualified Participant shall not be entitled to make the election hereunder for a Plan Year within the Qualified Election Period if the fair market value of his Accounts as of the last day of such Plan Year is less than $500. Effective January 1, 2008, notwithstanding anything herein to the contrary, the amounts that a Participant is eligible to elect to diversify under this Section 12.8(a) shall be reduced by any amounts such Participant has elected to receive or has received from the Plan under Section 10.1.

(i) "Qualified Participant" shall mean a Participant who has attained age 55 and who has completed at least 10 years of participation in the Plan.

(ii) "Qualified Election Period" shall mean the six Plan Year period beginning with the Plan Year in which the Participant first becomes a Qualified Participant.

(b) _Method of Diversifying Investment Implementation of Election_. The Qualified Participant's election shall be provided to the Administrator in writing, and shall be effective no later than 180 days after the close of the Plan Year to which the direction applies.

(c) _Diversification Options_. The Qualified Participant's diversification options are as follows: for diversification elections made prior to January 1, 2011, by all Qualified Participants and for diversification elections made on or after January 1, 2011, by terminated Qualified Participants, the options under subsections (i) and (ii) are available; for diversification elections made on or after January 1, 2011 by actively employed Qualified Participants, the option under subsection (i) is available (and option (ii) shall no longer be available):

(i) Effective January 1, 2007, the Qualified Participant may direct the Plan to transfer the amount the Qualified Participant elects to diversify under Section 12.8(a) into a separate subaccount under the JELD-WEN 401(k) Plan for the Qualified Participant (the "JELD-WEN ESOP Transfer Account"). Such transfer shall be made within 90 days after the last day of the period during which

12

the election can be made. ~~Such transfer shall be contributed~~ directly into the Qualified Participant's JELD-WEN ESOP Transfer Account in the JELD-WEN 401(k) Plan. Once transferred, such amount shall be subject to the provisions of the JELD-WEN 401(k) Plan. ~~This subsection shall apply notwithstanding any other provision of the Plan other than the provisions that require the consent of the Participant to a distribution with a present value in excess of the Designated Dollar Amount. If the Participant does not consent when required to do so, such amount shall be retained in the Plan.~~

(ii) The Qualified Participant may elect to receive a distribution of the amount the Qualified Participant elects to diversify under Section 12.8(a). Such distribution shall be made within 90 days after the last day of the period during which the election can be made. A distribution under this Section 12.8(c)(ii) may be made directly to the Qualified Participant in cash or rolled over to another tax-qualified plan or individual retirement account. ~~This subsection shall apply notwithstanding any other provision of the Plan other than the provisions that require the consent of the Participant to a distribution with a present value in excess of the Designated Dollar Amount. If the Participant does not consent when required to do so, such amount shall be retained in the Plan.~~

## V.

Provisions of Section 14 are amended as follows:

14.6 <u>Qualified Domestic Relations Order</u>.

(a) <u>General</u>. The provisions of this Section shall take precedent over any other provisions in the Plan which may be inconsistent with this Section.

(b) <u>Distributions under QDRO</u>. Distributions to an alternate payee (as defined in Code section 414(p)(8)) may be made in the manner described herein pursuant to a Qualified Domestic Relations Order (as defined in Code section 414(p) ("QDRO")) <u>in accordance with written procedures adopted by Administrator</u>.

(c) <u>Time and Manner of Payment</u>. Distributions may be made to an alternate payee pursuant to the terms of a QDRO.

(i) <u>Early Distribution</u>. The time of payment may be as provided herein, even if the time of payment is prior to the "earliest retirement age" as defined under Code section 414(p)(4)(B), and without regard to whether the Participant has Separated From Service, provided the ~~following conditions are met in the QDRO:~~

a. ~~The~~ QDRO specifies distribution at an administratively feasible time which would be permitted under the Plan if the Participant had Separated From Service as of the date of the QDRO <u>is determined to be qualified</u> and provides that in the event the Participant ~~becomes entitled to an earlier~~ <u>starts</u> distribution <u>at an earlier time</u> by reason of the

13

Participant's death or Disability, distribution to the alternate payee shall be ~~made~~ paid at the same time.

~~b.    The amount awarded to the alternate payee is credited to a separate account in the name of the alternate payee and shall be credited with interest at the Local Passbook Rate in effect each year beginning on the date of the decree until the date of distribution. The amount awarded to the alternate payee shall be valued as of the Valuation Date immediately preceding the date of the QDRO and shall not be credited with any further contributions, Forfeitures, income or loss of the Trust except for crediting of interest as provided herein.~~

(ii)    Delayed Distribution. ~~The time of payment of the benefit~~ Distribution to an alternate payee pursuant to a QDRO which does not comply with the provisions for an early distribution shall ~~be payable~~ start no earlier than the "earliest retirement age" as defined in Code section 414(p)(4)(B).

(iii)    Medium and Form of Payment. ~~Payment~~ Distribution to the alternate payee must be in a form permitted under the Plan. ~~, but not in the form of a joint and survivor annuity or in the form of Company Stock. Notice and~~ eConsent to make a distribution to an alternate payee ~~are~~ is not required except as may be otherwise provided in the QDRO or as otherwise required by applicable law.

(d)    Procedures. The Administrator shall establish reasonable procedures to determine the qualified status of a QDRO and to administer distributions under a QDRO, including:

(i)    Upon receiving a domestic relations order, the Administrator shall promptly notify the Participant and any alternate payee named in the order, in writing, of the receipt of the order and the Plan's procedures for determining the qualified status of the order. Within a reasonable period of time after receiving the domestic relations order, the Administrator must determine the qualified status of the order and must notify the Participant and each alternate payee, in writing, of its determination. The Administrator must provide such notice by mailing the notice to the individual's address specified in the domestic relations order, or in a manner consistent with Department of Labor regulations.

(ii)    If any portion of the Participant's nonforfeitable Account is payable during the period the Administrator is making its determination of the qualified status of the domestic relations order, the Administrator must make a separate accounting of the amounts payable. If the Administrator determines the order is a QDRO within 18 months of the date amounts first are payable following receipt of the order, the Administrator will direct the Trustee to distribute the payable amounts in accordance with the order. If the Administrator does not make its determination of the qualified status of the order within the 18-month determination period, the segregated account shall be returned to the Participant's

14

Accounts under the Plan and shall be paid at the time and the manner provided under the Plan as if no order had been received by the Plan. If the Administrator later determines that the order is a QDRO, Administrator will apply the order prospectively.

(iii)     To the extent it is not inconsistent with the provisions of the QDRO the Administrator may direct the Trustee to invest any partitioned amount under (ii) in a segregated subaccount or separate account and to invest the account in federally insured, interest-bearing savings account(s) or time deposit(s) (or a combination of both), or in other fixed income investments. A segregated subaccount remains a part of the Trust, but it alone shares in any income it earns, and it alone bears any expense or loss it incurs. The Trustee will make any payments or distributions required under this Section by separate benefit check(s) or other separate distribution to the alternate payee(s).

## VI.

This Amendment No. Three is generally effective as of January 1, 2010, except as follows:

(a)     Subject to (c), Amendment No. Three is not effective with respect to:

(1)     Determining the amounts paid in 2010 to Participants or former employee Participants as a distribution pursuant to timely application or a consent for payment delivered in accordance with procedures and deadlines adopted by the Administrator.

(2)     Determining the balance of any subaccount that is fully distributed in 2010 in accordance with this provision.

(b)     Subject to (c), for any former employee Participant who has commenced distribution of one or more subaccounts in an installment payment form prior to the end of 2010 pursuant to timely application or a consent for payment delivered in accordance with procedures and deadlines adopted by the Administrator, the following rules apply:

(1)     Amendment No. Three is not effective with respect to determining the amounts of any installment payments or the balance of the affected subaccounts.

(2)     The amounts of any installment payments and the balance of the affected subaccounts for such former employee Participants will continue to be determined based on Plan provisions in effect prior to this Amendment No. Three until the full distribution of the affected subaccounts is made.

(c)     Any person who receives a distribution during 2010 to which the rules of (a) or (b) apply shall receive an interest adjustment on the subaccount to which the distribution relates for 2010 through:

(1)     Subject to (2), the day prior to the date of payment of the 2010 distribution.

15

    (2) November 18, 2010, if the application for the distribution was made before November 12, 2010 and the date of payment of the 2010 distribution is on or after November 19, 2010.

  (d) To adjust the subaccounts to which the rules of (a) and (b) do not apply to account for the application of the rules in (a) and (b), the allocations shall be determined generally in the same manner as for 2009, except the adjustments associated with the application of the rules in (a) and (b) shall be allocated proportionately among all of the subaccounts of all Participants and former employee Participants other than those to which the rules in (a) and (b) apply.

  (e) Amendment No. Three is effective or not effective with respect to alternate payees the same as Participants and former employee Participants. Provisions in qualified domestic relations orders that specify computation or allocation of investment earnings in a matter inconsistent with the Plan as amended by Amendment No. Three will be disregarded. No domestic relations order that has been determined to be qualified will become disqualified because of conflict with the terms of the Plan as amended by Amendment No. Three.

**Company:**        JELD-WEN HOLDING, inc.

By: *[signature: R C Wendt]*

*Roderick C Wendt*, President + CEO
Print or type name and title

Date signed: *November 19*, 2010