IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONNIE DOOLEY, et al.,

    Plaintiffs,

v.

RONALD SAXTON, et al.,

    Defendants.

3:12-cv-01207-PK (LEAD)

OPINION AND ORDER

---

ROBERT W. JIMERSON, et al.,

    Plaintiffs,

v.

JELD-WEN INC., EMPLOYEE STOCK
OWNERSHIP AND RETIREMENT
PLAN, et al.

    Defendants.

1:13-cv-00177-PK

---

OPINION AND ORDER- Page 1

CHRISTOPHER W. WOERNER, et al.,

        Plaintiffs,

    v.

RONALD SAXTON, et al.,

        Defendants.

3:13-cv-00395-PK

PAPAK, Judge:

Pending before the court is a Motion to Transfer (#67) three consolidated cases from the Portland Division of the District of Oregon to the Medford Division. For the reasons discussed below, the Motion to Transfer is granted.

## BACKGROUND

Three substantially similar ERISA class-action cases have recently been filed in the Oregon District Court. *Dooley, et al. v. Saxton*, et al., 12-1207, (the "Dooley Case") was filed in the Portland Division of the Oregon District Court on July 5, 2012. *Jimerson, et al. v. Jeld-Wen, et al.*, 13-177, (the "Jimerson Case") was filed in the Medford Division of the Oregon District Court on January 30, 2013. On March 7, 2013, *Woerner et al., v. Saxton, et al.*, 13-395, was filed in the Portland Division. On March 11, 2013, this court entered an order consolidating the three cases. (#77.) The March 11 order also stayed all deadlines and proceedings until such time as the divisional venue matter is resolved. (*Id.*)

These cases challenge recent changes to the Jeld-Wen Employee Stock Ownership & Retirement Plan (the "Plan"). The parties agree that the claims in each case largely overlap. All allege that a November 2010 amendment (the "2010 Amendment") to the Plan violated the anti-

cut back provisions of ERISA. All allege the 2010 Amendment violated the notice provisions of ERISA. And all allege the Plan fiduciaries breached their fiduciary duties by failing to follow the Plan and by imprudently investing the accounts of separated Jeld-Wen employees retroactively in Jeld-Wen stock. The Jimerson Case advances two additional claims. One is a claim for benefits under terms of the Plan as it existed at the time the plaintiffs terminated employment. The second is a breach of fiduciary duty claim against the Plan Administrators for failing to set aside adequate assets to fund the Plan's obligations to separated employees and failing to prudently invest the assets to minimize the risk of a large loss.

The parties all agree that venue is proper in the District of Oregon. Jeld-Wen's corporate headquarters are located in Klamath Falls, Oregon. The defendants are the Plan and the Plan's Administrative Committee. The Administrative Committee is made up of three Jeld-Wen executives who are the individually named defendants in these cases: President and CEO Roderick Wendt; Executive Vice President and Chief Administrative Officer Ronald Saxton; and Executive Vice President and Chief Financial Officer R. Neil Stuart. The Summary Plan Document identifies that the Administrative Committee is located at 401 Harbor Isles Blvd., Klamath Falls, Oregon. In the Dooley Case, the Defendants consented to venue in the Portland Division.

The Jimerson plaintiffs, who as noted above filed in the Medford Division, contend divisional venue is improper in the Portland Division and the case must be transferred to the Medford Division. The remaining facts relevant to this divisional venue inquiry are set forth in the Discussion section, *infra*.

## LEGAL STANDARDS

### I. Federal District Court Venue

The propriety of district court venue in federal court is ordinarily governed by 28 U.S.C. § 1391. Where subject matter jurisdiction is not founded solely on diversity of citizenship, venue is proper in a judicial district if "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2). Moreover, in ERISA actions venue is proper is any district "where the plan is administered, where the breach took place, or where a defendant resides or may be found." See 29 U.S.C. § 1132(e)(2).

### II. Divisional Venue in Oregon District Court

Local Rule 3-2 divides the Oregon District Court into four divisions: Portland, Pendleton, Eugene, and Medford. LR 3-2(a). The "divisions of court . . . are established to identify divisional venue, distribute judicial work, and to align counties for juror management purposes." (Id.) Parties are required in their pleadings to "identify the division where 'divisional venue' lies." LR 3-2(b). "For purposes of these Local Rules, 'divisional venue' means the division of the court in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." (Id.)

### III. "Wrong Court" Transfers Under 28 U.S.C. § 1406(a)

When a movant maintains that venue is improper in the original filing forum, courts look to 28 U.S.C. § 1406. In these "wrong court" cases, "the district court must either dismiss the case or direct its transfer to the proper forum." *Northwest Environ. Defense Center v. United States Army Corp. of Engin.*, 2011 WL 1527598, *4 (D. Or. Apr. 20, 2011).

**IV. Convenience Transfers Under 28 U.S.C. § 1404(a)**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Resolution of a § 1404(a) motion requires a two-step analysis. First, the transferee court must be a court where the case could have originally been filed, meaning the court has jurisdiction and venue is proper. 28 U.S.C. §1404(a); *see also, Hatch v. Reliance, Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Grain Millers, Inc. v. Pacific Flexpak Co.*, 2008 WL 550124, *4 (D. Or. Feb. 26, 2008). If the first step is satisfied, the court must then balance the private and public interests to determine whether to transfer the action. *Hatch,* 758 F.2d at 414.

"Although both sections [1404 and 1406] were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). "The problem which gave rise to the enactment of [§ 1406(a)] was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

## DISCUSSION

The Jimerson plaintiffs move to transfer these consolidated cases to the Medford Division pursuant to Local Rule 3-2, and 28 U.S.C. §1406(a), arguing that the Dooley and Woerner Cases

were filed in an improper divisional of the District of Oregon. In the alternative, the Jimerson plaintiffs move to transfer the cases under 28 USC §1404(a).

The first step in analyzing a motion to transfer based on LR 3-2 and 28 U.S.C. § 1406(a) is to determine whether divisional venue is proper or improper in the challenged forum. *See Grain Millers*, 2008 WL 550124 at *4 (first determining venue did not lie in divisional venue in which case was filed); *see also Northwest Envtl*, 2011 WL 1527598 at *7 (first evaluating allegations in complaint and concluding venue proper in Portland Division). As noted above, divisional venue in Oregon is proper in "the division in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." LR 3-2(b). Under LR 3-2 and § 1406(a), the party whose choice of venue is being challenged has the burden of showing that the case is filed in the proper venue. *Northwest Envtl.*, 2011 WL 1527598 at *4; *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Accordingly, the Dooley plaintiffs[1] have the burden of establishing divisional venue is proper in Portland.

Here, the Dooley plaintiffs contend divisional venue is proper in the Portland Division because Columbia Financial Advisors, Inc. ("CFAI") is located in Portland, Oregon. CFAI is a business appraisal and advisory firm that performed annual valuations of Jeld-Wen stock. The Dooley plaintiffs contend Katheryn Aschwald of CFAI will be a crucial non-party witness whose testimony will be required in any future trial, and they argue "allegations relating to the valuations of Jeld-Wen stock form a substantial part of the events which give rise to this

---

[1] The Dooley plaintiffs and the Defendants are aligned in their position that divisional venue is proper in Portland. The Woerner plaintiffs did not file briefs, but having filed their complaint in Portland and noting the Woerner plaintiffs and Dooley plaintiffs share the same local counsel, I presume the Woerner plaintiffs join in the Dooley plaintiffs' opposition.

OPINION AND ORDER- Page 6

litigation." However, the allegations in the Dooley complaint do not support the conclusion that any of their claims arise out of CFAI's Portland-based appraisals.

The most telling evidence that the Portland Division is an improper venue for this case comes from exposing what is *not* pled in the Dooley complaint. The complaint cites not one event, decision, action or omission that takes place in Portland or the Portland Division. No inference can be drawn from the face of the complaint that any part, much less a substantial part, of the events giving rise to the claims took place in Portland. Neither CFAI nor Ms. Aschwald are mentioned in the Dooley complaint. Nowhere does the complaint challenge the processes CFAI employed to value Jeld-Wen stock, nor is the propriety of CFAI's valuations challenged.

The crux of the Dooley complaint is that the 2010 Amendment, adopted and implemented by the Defendants in Klamath Falls, had the effect of negatively and retroactively diminishing the plaintiffs' accounts. There is no allegation CFAI played any role in adopting or implementing the 2010 Amendment. While the value of the plaintiffs' accounts is tied to the value of Jeld-Wen stock, the CFAI stock valuation process is not placed at issue, and it is not an "event" giving rise to the Dooley plaintiffs claims. And even if the CFAI stock valuations become controverted, based on the Dooley complaint those valuations certainly do not make up a "substantial" part of the events giving rise to the claims.

Moreover, the only evidence offered by the Dooley plaintiffs tying CFAI to Portland is the fact that CFAI is a Portland company. There is no evidence that substantial events took place in the Portland office of CFAI sufficient to meet the divisional venue standards. Indeed, CFAI's own Appraisal Reports belie the role Portland plays in this matter. Ms. Aschwald writes "[i]n connection with this appraisal" she "met with the following members of Company management regarding JELD-WEN's current status and outlook at the Company's corporate headquarters in

OPINION AND ORDER- Page 7

Klamath Falls, Oregon: Roderick C. Wendt, President and CEO, Stuart Sullivan, Senior Vice President and CFO, Matt Wendt, Treasury Manager, Bill Shaffner, Executive Vice President - Window Group, Dan Malicki, President-Door Operations, and Barry Homrighaus, President-Window Manufacturing and COO." (#80, Rinaldi Decl., Ex. N at p. 11.) In addition, in connection with her appraisals Ms. Aschwald "toured six of Jeld-Wen's facilities located in and near Klamath Falls." (*Id.*) There is no mention of Portland in the Appraisal Reports beyond CFAI's address and logo on the footer of a few pages.

At oral argument, a second theory for divisional venue was proffered. The Dooley plaintiffs argued that guidance should be taken from the ERISA venue statue which provides venue is proper where any of the defendants "may be found," and certain individual defendants "may be found" in Portland. That argument is unpersuasive. The ERISA venue statute was designed to provide ERISA plaintiffs with a wide choice of venue options. *See, Varsic v. United States District Court for the Central District of California*, 607 F.2d 245, 247-48 (9th Cir. 1979). However, ERISA's venue provision specifically applies only to *district* court venue. The ERISA venue provisions do not abrogate the District of Oregon's authority to manage its case load and define in which division a particular case may proceed. In this instance, even though venue lies in the District of Oregon, divisional venue does not lie in the Division of Portland.

Because the Dooley and Woerner Cases were both filed in the wrong division, I follow the directive in *Grain Millers* that it would be "incorrect" to apply a § 1404(a) convenience analysis to determine where this case should proceed. Instead, this being a "wrong court" case, I must either dismiss the cases or, in the interests of justice, transfer them to a court in which they could have been brought. *Grain Millers*, 2008 WL 550124 at *4; 28 U.S.C. § 1406(a). Here, no

OPINION AND ORDER- Page 8

party disputes that divisional venue lies in the Medford Division and the interests of justice call for a transfer to the Medford Division rather than dismissal.

## CONCLUSION

For the foregoing reasons, the Motion to Transfer (#67) the following consolidated cases is granted; *Dooley, et al. v. Saxton*, et al., 3:12-cv-01207-PK; *Jimerson, et al. v. Jeld-Wen, Inc., Employee Stock Ownership and Retirement Plan, et al.*, 1:13-cv-00177-PK; and *Woerner et al., v. Saxton, et al.*, 3:13-cv-00395-PK. The Court notes that the Jimerson Case was originally assigned to Magistrate Judge Mark Clarke in Medford and that he has some familiarity with this litigation. Reassignment of these consolidated cases to Judge Clarke would be appropriate.

Dated this 1st day of May, 2013.

_____
Honorable Paul Papak
United States Magistrate Judge